**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Antonio Glass,

      Plaintiff,

    v.

Village of Maywood and Maywood Police
Officers Illir Shemitraku and John Cohairo,

     Defendants.

Case No. 22 C 164

Judge Jorge L. Alonso

## Memorandum Opinion and Order

Before the Court is Defendant Illir Shemitraku ("Shemitraku"), Defendant John Cochiaro ("Cochiaro," and together with Defendant Shemitraku, "Defendant Officers")[1] and Defendant Village of Maywood's ("Village," and together with the Defendant Officers, "Defendants") motion for summary judgment ("Motion" or "Mot."). For the following reasons, the Court grants the Motion.

## Background

In this civil rights action brought under 42 U.S.C. § 1983, Plaintiff Antonio Glass alleges that the Defendant Officers violated his constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution by falsely arresting, unlawfully detaining, and maliciously prosecuting him. Plaintiff asserts an indemnification claim against the Village for the actions of the Defendant Officers and names the Village as a defendant in the malicious prosecution claim on the basis of *respondeat superior*. The Defendants now move for summary judgment in their favor on all claims against them.

---

[1] Although Plaintiff names "John Cohairo" as a defendant in the Amended Complaint, the Court adopts the Defendant Officers' spelling of "Cochiaro."

I.    **Evidentiary Issues**[2]

As an initial matter, Defendants move to strike Plaintiff's responses to DSOF that Defendants contend mischaracterize their statements, consist of improper argument, go beyond the facts to which he is responding, and lack support in the record. Defendants argue that their statements of fact should therefore be deemed admitted. Defendants also move to strike PSOF that Defendants contend lack evidentiary support, misstate the cited record, consist of extraneous information, and otherwise fail to comply with the rules. Defendants argue that PSOF contain irrelevant and immaterial statements, cite materials that do not actually support his allegations, take witness testimony out of context, and cite witnesses with no personal knowledge. Finally, Defendants move to strike portions of Plaintiff's response brief (ECF No. 96) that advance factual statements without record citations or that rely upon mischaracterizations of the evidence.

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment and states that motions to strike are disfavored. The Court enforces Local Rule 56.1 strictly. *See McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 790 (7th Cir. 2019) ("We take this opportunity to reiterate that district judges may require strict compliance with local summary-judgment rules."); *FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005) ("Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules."). At the summary judgment stage, a party cannot rely on allegations; he or it must put forth evidence. Fed. R. Civ. P. 56(c)(1)(A); *see also Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) ("As the 'put up or shut up' moment in a lawsuit,' summary judgment requires a non-

---

[2] The Court refers to the Defendants' statement of material facts as "DSOF" (ECF No. 95) and Plaintiff's statement of additional material facts as "PSOF" (ECF No. 98).

moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial."). Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact admitted. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218–19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817–18 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of the duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). The moving party has the "ultimate burden of persuasion" to show entitlement to judgment as a matter of law. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

The Court considers the Defendants' arguments and objections respecting Plaintiff's responses to DSOF, PSAF, and Plaintiff's response brief in conjunction with its analysis of Defendants' Motion. In accordance with the law set forth above, to the extent Plaintiff fails to properly dispute any of Defendants' asserted facts, the Court deems those facts admitted. Furthermore, the Court will not consider Plaintiff's asserted facts that are not supported by deposition testimony, documents, affidavits, or other evidence admissible for summary judgment purposes. Where any such facts are material to the Court's analysis, the Court notes them within this Opinion.

## II.    Factual Background

In resolving a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The following facts are taken from the record and are undisputed unless otherwise noted.

3

Plaintiff was at a party from about 8:00 p.m. on June 23, 2020, until approximately 1:00 a.m. on June 24, 2020. (DSOF ¶ 62.) Some time before 2:00 a.m., Aaliyah Howard picked up Plaintiff and her then-boyfriend Brendan Eiland in her red Chrysler Sebring. (PSOF ¶ 5.) This was Howard's second time meeting Plaintiff, whom she knew by his nickname, "Tone." (*Id.* ¶ 2.) Eiland sat in the front passenger seat and Plaintiff was the sole rear passenger.

At approximately 2:04 a.m., Shemitraku was on patrol in an unmarked Maywood Police Department squad car traveling westbound on Harrison from 8th Avenue when he observed the Chrysler with an obstructed temporary license plate. (DSOF ¶ 5.) It is undisputed that an obstructed license plate constitutes a violation of the Illinois Vehicle Code and is grounds to conduct a traffic stop on a vehicle. (*Id.* ¶ 6.) Shemitraku activated his emergency lights and siren to conduct a traffic stop and curbed the vehicle at the 1100 block of West Harrison in Maywood. (*Id.* ¶ 7.) The parties agree that Shemitraku curbing the car was lawful.

While curbing the vehicle, Shemitraku had his spotlight on the back of the car and observed the sole rear passenger (Plaintiff) moving around and making furtive movements in the back seat. (*Id.* ¶ 8.) Shemitraku saw Plaintiff turning his upper body, looking back over his right shoulder, and shifting his whole body several times. (*Id.* ¶ 9.) Shemitraku testified that the car was wobbling up and down on the left and right sides from the movement in the car. (*Id.*)[3] After the vehicle was stopped, Shemitraku still saw Plaintiff twisting his body while his spotlight was pointed on him. (*Id.* ¶ 10.) Shemitraku never saw the backseat passenger move the seat or open anything. (PSOF ¶ 6.) Plaintiff disputes that turning to look over his shoulder should be described as "furtive."

---

[3] Although Plaintiff disputes that Shemitraku testified that the wobbling of the car was from the movement in the car, that is the only reasonable inference to draw from Shemitraku's testimony. (ECF No. 95-11 at 22:16–24:3); *see Washington v. City of Chicago*, 98 F.4th 860, 871 (7th Cir. 2024) (Courts "do not draw inferences that are supported by only speculation or conjecture." (citation omitted)).

Shemitraku then exited his vehicle, and as he approached the Chrysler on the driver's side, he smelled a strong odor of burnt cannabis coming from inside the vehicle. (DSOF ¶ 11.) Cochiaro arrived on scene shortly after the vehicle was stopped. (*Id*. ¶ 12.) Upon his arrival, Cochiaro approached the vehicle from the rear passenger side, immediately smelled a strong odor of cannabis coming from inside the vehicle, and stood by as Shemitraku conducted his traffic stop and investigation. (*Id*. ¶ 13.) Shemitraku, while speaking with the driver (Howard), observed a burnt rolled paper cigar (also known as a "roach"), not properly packaged, in plain view by the gearshift. (*Id*. ¶ 14.) When Shemitraku inquired about the roach, Howard admitted that they were smoking weed in the vehicle immediately prior to being stopped.[4] (*Id*. ¶ 15.) Shemitraku then asked if there was any more cannabis inside the vehicle, and the front seat passenger (Eiland) admitted he had a scale and some weed in the center console and showed Shemitraku the bag of weed. (*Id*. ¶ 16.) The bag of weed that was shown to Shemitrku did not have any labels on it, and it is undisputed that it is illegal to have cannabis in a vehicle unless it is purchased from a cannabis store in an odor-proof bag with a label and a receipt. (*Id*. ¶ 17.)

Shemitraku and Cochiaro then asked Plaintiff, Howard, and Eiland to exit the vehicle to further the narcotics investigation. (*Id*. ¶ 18.) There is no dispute that the search of the vehicle was lawful. Cochiaro stood by with Plaintiff, Howard, and Eiland while Shemitraku continued his narcotics investigation. (*Id*. ¶ 19.) Upon a cursory search, Shemitraku recovered a small black scale and a clear plastic bag containing a green leafy substance (20 grams) of suspect cannabis from the center console that was accessible to all three occupants and not in the proper sealed, odor-proof, child-resistant packaging. (*Id*. ¶ 20.) Next, Shemitraku searched the rear seat of the

---

[4] Plaintiff disputes that Howard testified that Plaintiff was smoking weed in the car. Howard's testimony on this point is ambiguous, but even so, whether Plaintiff was smoking weed in the car is not material to the issues in this Motion.

vehicle and observed that the rear right backrest was in a "V" shape and not fully latched to the trunk frame. (*Id*. ¶ 21.) Shemitraku used his flashlight to illuminate the area where the seat was not fully latched to the trunk and saw a black firearm with an extended magazine resting in an upright position between the back seat and the trunk area. (*Id*. ¶ 23.)

Although it is undisputed that the backrest was not fully latched to the trunk frame, the parties dispute whether Shemitraku saw the gun before or after he shifted the backrest down. (*Id*. ¶ 24.) Shemitraku's testimony is ambiguous on this point, and so the Court infers in Plaintiff's favor that Shemitraku pulled the backrest down before seeing the gun in the trunk. (*Id*.; Pl.'s Resp. to DSOF ¶ 24.) Shemitraku did not have to move any of the trunk contents to see the firearm (DSOF ¶ 24), and it was possible to gain access to the trunk area of the Chrysler from the rear seat where Plaintiff was sitting. (*Id*. ¶ 22.) Shemitraku recovered the handgun, which was loaded with a live round in the chamber and an unknown amount of live rounds in the extended magazine and had a defaced serial number. (*Id*. ¶ 25.) Shemitraku asked if Plaintiff, Howard, or Eiland had a Firearm Owner's Identification Card ("FOID") or Concealed Carry License ("CCL"), and they all said "No." (*Id*. ¶ 27.) It is undisputed that it is illegal to possess and transport a firearm in a vehicle without a valid FOID and CCL. (*Id*. ¶ 28.)

Shemitraku instructed his assisting officers that everyone was being placed into custody for further investigation. (*Id*. ¶ 29.) Plaintiff does not know which officer placed him in handcuffs. (*Id*. ¶ 30.) All three subjects were transported to the Maywood Police Department, and Shemitraku stayed on scene and waited for the tow truck to arrive before proceeding to the police station and preparing the narrative of his report. (*Id*. ¶ 32.) Cochiaro transported Eiland to the Maywood Police Department and assisted by completing property inventory sheets and part

of the arrest card for Plaintiff. (*Id.* ¶ 31.) Cochiaro never personally entered or searched the vehicle and did not recover anything from the vehicle. (*Id.* ¶ 71.)

Shortly after 4:00 a.m. on June 24, 2020, Howard signed a post-*Miranda* handwritten statement (the "Statement") (*id.* ¶ 34), which is the subject of disagreement by the parties. Shemitraku testified that Plaintiff knocked on her cell door to get his attention so that she could tell him what happened, which Plaintiff disputes based on Howard's testimony that she was in a cell for about an hour before two officers came to interrogate her. (*Id.* ¶ 34; Pl.'s Resp. to DSOF ¶ 34.) It is undisputed that Shemitraku was one of two officers who interviewed Plaintiff, but the identity of the second officer is disputed. As the Court will discuss in greater detail below, the identity of the second officer is immaterial.

Next, Shemitraku testified that Howard verbally told him and Rice that "after she noticed the light she looked back, she was looking back to see if the police car was still behind her and that's when she observed Mr. Glass put the object in the back of the car." (DSOF ¶ 43; Shemitraku Dep. 39:21–40:1, Jan. 20, 2023, ECF No. 95-11.) Plaintiff disputes this fact based on Howard's testimony at Plaintiff's underlying criminal trial that she did not see who had the gun, she does not know how the gun got in her vehicle, and she never saw Plaintiff holding the gun. (Hr'g Tr. 42:12–20, Sept. 27, 2021, ECF No. 98-4.) Howard also testified in her deposition in this case,

> And he said, okay, Tone, did you see Tone get anything out your trunk, and I'm like no. And that's when they told me wrong answer. I'm like – they said all you have to say in your rearview mirror you seen Tone set down your back seat. And that's when he stopped me. He was like, oh, change that. Make sure when you say his name, say Antonio . . . . Say when you looked into your rearview mirror, you seen your back seat go down, and you seen Tone put something in your trunk. So they was telling me, like, if I basically write that down in paper, that I could go home the next morning and they won't call DCFS on me[.]

(Howard Dep. 52:18–53:11.) Although Defendants argue that the fact that Howard later recanted her verbal statement does not create a dispute of fact as to whether Howard actually made the verbal statement to Shemitraku, the Court finds that it is reasonable to infer from Howard's testimony in Plaintiff's favor that Howard did not make the verbal statement.

Next, the parties dispute whether Howard gave her written Statement freely and voluntarily. Howard's written Statement states,

> My name is Aaliyah Howard[.] Im [*sic*] 23 years old. I graduated from Austin Career Academy, which is my highest level of education. I am giving this statement freely and voluntarily. No one has threatened me to give this statement. On [J]une 24, 2020 around 2am I was driving up [H]arrison when I was stopped by Maywood police while smoking cannabis (marijuana) inside the vehicle. When I notice[d] we were being stopped there was a lot of movement in the backseat. When I turned around I then notice[d] the person in the back had a hand gun and then placed it in my trunk. I do not know the guy [*sic*] full name[.] I know he goes by [T]one. The weed that was found in my middle cons[o]l was [B]rendens [*sic*].

(ECF No. 95-4.) The Statement is signed "Aaliyah Howard." (*Id*.) Howard testified that her Statement "wasn't more of what I told them, it was what they told me to write down." (Howard Dep. 42:10–11.)

Defendants submit Shemitraku's testimony that he and Rice never coerced, threatened, or pressured Howard, did not tell her what to write in the Statement, and that Howard never changed her story during the interview or told contradictory stories. (Def. Resp. PSOF ¶ 18.) Plaintiff stipulated in the underlying criminal trial that, if Shemitraku was called to testify in the State's rebuttal case, he would testify that "Howard told Officer Shemitraku and Sgt. Rice that, when she was pulled over by Officer Shemitraku on June 24, 2020, she observed a lot of movement in the backseat where Antonio Glass was seated, and, when she turned, she observed that Antonio Glass had a handgun which he placed in her trunk." (*Id*. ¶ 57.)[5] Plaintiff further

---

[5] The Court disagrees with Defendants that by so stipulating Plaintiff has conceded the substance of Shemitraku's testimony.

stipulated that Shemitraku would testify that "Howard then agreed to memorialize said statement into a handwritten statement, summarizing the events as described above" and that "Howard further wrote that she was giving said statement freely and voluntarily, that no one has threatened her to give said statement, and that she then signed both pages of her handwritten statement." (*Id*. ¶ 58.) Plaintiff further stipulated that Shemitraku would testify that "during his interview with Aaliyah Howard, Sgt. Rice and he never threatened Aaliyah Howard in any capacity, including threatening to call DCFS to report her and have her children taken away." (*Id*. ¶ 59.)

Eiland provided a post-*Miranda* statement in which he admitted to possessing the weed and scale, but stated he did not know anything about the gun. (*Id*. ¶ 47.) Plaintiff was read his *Miranda* rights but refused to speak to Shemitraku and Rice at the station. (*Id*. ¶ 49.) It is undisputed that Plaintiff is a convicted felon and was at that time. (*Id*. ¶ 55.)[6] As for when Shemitraku learned of that fact, Shemitraku testified that he did not look up Plaintiff's criminal history prior to interviewing Howard (*id*. ¶ 51), but there does not appear to be any dispute that he knew that fact by at the time he contacted felony review and informed the Assistant State's Attorney ("ASA") of all the events that occurred, his report, and the Statement. (*Id*. ¶ 52.) ASA Bagnowski approved felony charges for Plaintiff for Unlawful Use of a Weapon by a Felon (720 ILCS 5/24-1.1(a)) and Possession of Defaced Firearm (730 ILCS 5/24-5(b)) shortly after 6:00 a.m. on June 24, 2020. (*Id*. ¶ 53.) The ASA makes the ultimate decision on whether to bring felony charges against a suspect, which suspect to charge, and what felony charges to approve. (*Id*. ¶ 54.)

---

[6] Plaintiff objects pursuant to Rule 609 of the Federal Rules of Evidence without further explanation. Absent some explanation from Plaintiff as to how Rule 609 operates in these circumstances, the Court concludes that that Rule is inapplicable here where impeachment is not at issue.

The trial court judge in Plaintiff's underlying criminal trial found Plaintiff not guilty. (*Id*. ¶ 60.) Cochiaro did not have any involvement in the criminal proceedings and was never contacted by the State's Attorney's Office regarding Plaintiff's underlying criminal trial. (*Id*. ¶¶ 72–73.) This lawsuit followed. Plaintiff brings claims against the Defendant Officers under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights, alleging false arrest, unlawful pretrial detention, and malicious prosecution. Plaintiff also brings claims for indemnification, and *respondeat superior* liability based on the malicious prosecution claim against the Village. The Defendants now move for summary judgment on all claims asserted against them.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because the claims arise under the U.S. Constitution and 42 U.S.C. § 1983. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

## <u>Legal Standard</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must view all the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true."

*Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Id.* at 248.

## Discussion

### I. False Arrest, Unlawful Pretrial Detention, and Malicious Prosecution (Counts I, II, and IV)

Plaintiff brings false arrest, unlawful pretrial detention, and malicious prosecution claims against the Officer Defendants. Defendants argue summary judgment is warranted on these claims because Plaintiff's arrest, pretrial detention, and prosecution were supported by probable cause. The Court agrees.

#### a. Cochiaro

Defendants argue that Plaintiff's claims against Cochiaro fail because he lacks the requisite personal involvement. The Court agrees.

Liability under Section 1983 requires a defendant to have directly caused or participated in the alleged constitutional deprivation, and an individual is only liable for his own misconduct. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Although it is possible to hold multiple officers liable for false arrest, doing so requires the non-arresting officer "to have undertaken some action prior to, or perhaps at the time of, [the arresting officer's] order to arrest . . . to have 'caused' or 'participated' in it." *Jenkins v. Keating*, 147 F.3d 577, 583–84 (7th Cir. 1998). As for malicious prosecution, liability under Illinois law extends to

officers that played a significant role in causing Plaintiff's prosecution. *Frye v. O'Neill*, 520 N.E.2d 1233, 1240 (Ill. App. Ct. 1988).

Here, the undisputed evidence shows that Cochiaro did not curb or search the vehicle, detain or transport Plaintiff to the station, obtain any witness statements, speak to the ASA that approved the felony charges, or appear or testify at any of the criminal proceedings. Plaintiff argues that Cochiaro authored Plaintiff's arrest report and identified himself as an "arresting officer," pointing to Cochiaro's testimony that his handwriting appears under the term "Arresting Officers." (PSOF ¶ 1.) Defendants do not dispute that Cochiaro authored at least part of the arrest report, although Cochiaro testified that someone else's handwriting also appears on the arrest report. (Def. Resp. PSOF ¶ 1.) Cochiaro also testified that the term "arresting officer" on the arrest report really means that Cochiaro was on scene. (*Id.*) To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson*, 892 F.3d at 894, 896. Here, the mere fact that Cochiaro was on scene at the time of Plaintiff's arrest is insufficient evidence that Cochiaro personally caused Plaintiff's arrest. *Jenkins*, 147 F.3d at 583–84; *Ortiz v. City of Chicago*, Case No. 09-cv-2636, 2010 WL 3833962, at *8 (N.D. Ill. Sept. 22, 2010) (officer's mere presence at the scene fails to provide the requisite personal involvement to support a false arrest claim). And there is no evidence showing that Cochiaro was personally involved in Plaintiff's pretrial detention or prosecution. There is some dispute about whether he participated in the interview that led to Howard's Statement, but, as the Court will discuss in more detail below, that dispute is immaterial. Therefore, Plaintiff's claims against Cochiaro (Counts I, II, and IV) are dismissed. The Court proceeds to consider Counts I, II, and IV as against Shemitraku.

### b. Shemitraku

Plaintiff's claim hinges on Howard's testimony purportedly showing that Shemitraku knowingly fabricated the Statement by threatening to call DCFS to have Howard's children taken away if she did not write a statement implicating Plaintiff as being in possession of the gun. (Am. Compl. ¶¶ 18–20.) Defendants argue that Shemitraku nonetheless had probable cause to arrest, detain, and prosecute Plaintiff.

The existence of probable cause defeats claims for false arrest, unlawful pretrial detention, and malicious prosecution. *Coleman v. City of Peoria*, 925 F.3d 336, 350 (7th Cir. 2019) ("Although [false arrest] is a federal constitutional claim and [malicious prosecution] is a state tort, the existence of probable cause defeats both."); *Vaughn v. Chapman*, 662 F. App'x 464, 467 (7th Cir. 2016) ("[T]he existence of probable cause is a complete defense to malicious prosecution[.]"); *Williams v. City of Chicago*, 315 F.Supp.3d 1060, 1070 (N.D. Ill. Jun. 1, 2018) ("seizure of the plaintiff pursuant to legal process unsupported by probable cause" is an element to an unlawful pretrial detention claim). Probable cause is not a high bar, *Dist. of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018), and Plaintiff bears the burden of establishing its absence. *McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009) ("In this circuit the allocation of the burden of persuasion in a § 1983 case claiming a Fourth Amendment violation is clear: a plaintiff claiming that he was arrested without probable cause carries the burden of establishing the absence of probable cause."). An officer has probable cause if the totality of the circumstances known to the officer at the time of the arrest would warrant a reasonable person in believing the arrestee committed a crime. *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013). The probable cause inquiry "does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable." *Fleming v. Livingston Cnty.*, 674 F.3d 874, 878–79

(7th Cir. 2012). Although mere suspicion is not enough, an arrest can be made without virtual certainty that a suspect has committed an offense. *United States v. Covarrubias*, 65 F.3d 1362, 1368 (7th Cir. 1995).

Plaintiff was charged with (1) Unlawful Use or Possession of a Weapon by a Felon and (2) Possession of Defaced Firearm. In Illinois, it is illegal to knowingly possess any firearm on or about one's person after having been previously convicted of a felony offense. 720 ILCS 5/24-1.1(a). It is undisputed that Plaintiff had been convicted of a predicate offense at the time of his arrest. There is no evidence in the record that Shemitraku knew this fact when he arrested Plaintiff, although Shemitraku knew that fact by the time the ASA made the decision to charge Plaintiff. Nonetheless, "probable cause to arrest on any basis precludes a false arrest claim," *Taylor v. Hughes*, 26 F.4th 419, 432 (7th Cir. 2022), and it is also illegal in Illinois to knowingly possess any firearm upon which the manufacturer's serial number has been removed or obliterated. 720 ILCS 5/24-5(b). It is undisputed that the gun at issue in this case had a defaced serial number and that Shemitraku observed as much when he pulled the gun from the trunk. Plaintiff does not argue that Shemitraku lacked knowledge of this fact necessary to arrest him. The only question, then, is whether Shemitraku had probable cause to believe that Plaintiff knowingly possessed the gun.[7]

For both charges, the possession element can be satisfied by actual or constructive possession. *United States v. Garrett*, 903 F.2d 1105, 1110 (7th Cir. 1990). Because there is no contention that Plaintiff actually possessed the gun, the Court confines its discussion to constructive possession. Constructive possession can be shown through evidence of the suspect's knowledge of the presence of the weapon and his immediate and exclusive control over the area

---

[7] Plaintiff does not argue that curbing the vehicle or conducting the narcotics search of the vehicle were unlawful.

when it was found. *Taylor*, 26 F.4th at 432; *see also Garrett*, 903 F.2d at 1110 (constructive possession exists when a person knowingly has the power and intention at a given time to exercise dominion and control over an object). Knowledge may be inferred from "(1) the visibility of the contraband from the [plaintiff's] location within the car; (2) the amount of time that the [plaintiff] had to observe the contraband; (3) any gestures or movements made by the [plaintiff] that would suggest that [he] was attempting to retrieve or conceal the contraband; and (4) the size of the contraband." *People v. Jackson*, 2017 IL App (1st) 150677-U, ¶ 31 (citation omitted) (finding constructive possession where the officer observed the suspect make furtive movements and the gun was recovered from under the seat where he was sitting). "Proximity to the item [or] presence on the property where the item is located, . . . without more, is not enough to support a finding of constructive possession." *United States v. Morris*, 576 F.3d 661, 666 (7th Cir. 2009); *see also United States v. Chairez*, 33 F.3d 823, 825 (7th Cir. 1994) ("The mere fact that both Chairez and the gun were in the same car is an insufficient basis for a factfinder to determine that Chairez had knowledge of a firearm.").

The Court agrees with Defendants that Shemitraku had probable cause to believe Plaintiff had constructive possession of the gun that was recovered from the Chrysler. Plaintiff was the sole backseat passenger in the Chrysler. When Shemitraku lawfully curbed the Chrysler, he observed Plaintiff making what Shemitraku considered to be "furtive" movements, looking back over his right shoulder and turning his body. The Chrysler was wobbling up and down on the left and right sides from the movement in the vehicle. During the ensuing lawful narcotics investigation, Shemitraku observed that the rear seat back was in a "V" shape and not fully latched to the trunk frame. He pulled the seat back down, illuminated the area with his flashlight,

15

and saw a gun with an extended magazine in the trunk. The gun was directly behind Plaintiff's seat in an area that would have been accessible to him from the back seat.

Defendants rely upon *Young v. City of Chicago*, 987 F.3d 641, 642 (7th Cir. 2021) and *Henderson v. Rangel*, 19 C 6380, 2022 WL 3716263, at *1 (N.D. Ill. Aug. 26, 2022), *appeal dismissed sub nom. Henderson v. City of Chicago*, No. 22-2706, 2023 WL 6290743 (7th Cir. May 17, 2023), which the Court finds persuasive. In *Young*, the Seventh Circuit concluded on *de novo* review of the district court's summary judgment order that the officers had probable cause to believe the plaintiff Young possessed a firearm because they found a gun right next to the plaintiff in the car he was driving. *Young*, 987 F.3d at 642. The court concluded that certain facts did not defeat probable cause. First, Young told the officers that the gun belonged to a passenger who was riding the vehicle, but the court found that "[m]any putative defendants protest their innocence, and it is not the responsibility of law enforcement officials to test such claims once probable cause has been established." *Id.* at 644 (quoting *Spiegel v. Cortese*, 196 F.3d 717, 724 (7th Cir. 1999)). Second, the officers saw the passenger handle the gun, but the court found that the officers had probable cause to believe that Young and the passenger possessed the gun jointly because Young was sitting next to the gun. *Id*. at 645. Third, Young alleged that the police falsified evidence against him after his arrest by destroying his first written statement and making him write a second, more incriminating version that omitted several exonerating facts. The court found that even if the police did so, they still had probable cause to detain Young pending trial because they "found Young with a gun next to him in the car that he was driving" and "[t]hey didn't need anything else." *Id*.

In *Henderson*, the district court relied on *Young* and found that the defendant officers had probable cause to arrest and detain the plaintiff, Henderson, for unlawful possession of a firearm.

2022 WL 3716263, at *5. Henderson was driving a vehicle when police officers conducted a lawful traffic stop because the front passenger was not wearing a seatbelt. *Id*. at *1. The vehicle belonged to that passenger. *Id*. An officer saw Henderson reaching around in the area of his seat before exiting the vehicle, then found a loaded handgun with an obliterated serial number underneath the seat where Henderson was sitting. *Id*. at *4. The district court found that the officer had probable cause to believe Henderson had constructive possession of the gun based on Henderson's furtive movements and the fact that the gun was easily within Henderson's dominion and control. *Id*. The court noted that the "calculus may be different" if the gun had "been found in the back seat outside Henderson's reach, or the trunk of the car[.]" *Id*.

Plaintiff attempts to distinguish *Henderson* because there, the officers alleged that they saw the plaintiff reach directly to the location of where the gun was found and there is no such implication here—Plaintiff simply turned to look when the light was shined and did not reach for anything. But constructive possession does not require observations that the suspect was reaching directly to the location of the gun; knowledge can be inferred through gestures or movements suggesting he was trying to retrieve or conceal it. *Jackson*, 2017 WL 4274082, at *5–6; *Henderson*, 2022 WL 3716263, at *3. Here, Shemitraku testified that, while curbing the vehicle, he saw Plaintiff moving around, twisting, and making furtive movements in the back seat, and observed that the car was wobbling from left to right.

Plaintiff also argues, without citation to authority, that there was no constructive possession because the gun was found in the trunk of a car that Plaintiff did not own, and the gun was not in plain sight or open view. But as Defendants point out, ownership of the property where the contraband is found is not essential to a finding of possession beyond a reasonable doubt, let alone to support probable cause. *Garrett*, 903 F.2d at 1112 n.8. Nor does constructive

17

possession require the gun to be in plain sight. *Taylor*, 26 F.4th at 432 (constructive possession can be shown through the suspect's knowledge of the presence of the weapon and immediate and exclusive control over the area it was found); *Jackson*, 2017 WL 4274082, at *5–6 (knowledge may be inferred from any gestures or movements that would suggest attempts to retrieve or conceal the contraband). This is not a case where the gun was locked in a trunk or inaccessible to Plaintiff. Here, as in *Young* and *Henderson*, the gun was easily within Plaintiff's "dominion and control."

In support of his argument that there was no probable cause of constructive possession, Plaintiff cites a number of out-of-circuit criminal cases finding insufficient evidence to establish constructive possession beyond a reasonable doubt. "But probable cause demands much less than proof beyond a reasonable doubt." *Washington*, 98 F.4th at 876–77 (citing *United States v. Bullock*, 632 F.3d 1004, 1022 (7th Cir. 2011)); *see also Bullock*, 632 F.3d at 1022 (probable cause determination "does not require evidence sufficient to support a conviction, nor even evidence that it is more likely than not that the suspect committed a crime" (internal citation omitted)). The undisputed evidence shows that the totality of the circumstances known to Shemitraku at the time of Plaintiff's arrest would warrant a reasonable person to believe that Plaintiff knowingly had the power and intention to exercise dominion and control over the defaced gun. Shemitraku therefore had probable cause to arrest Plaintiff for unlawful possession of a defaced firearm.

Next, Plaintiff's claims for unlawful pretrial detention and malicious prosecution claims fail for the same reason that his false arrest claim fails: Shemitraku had probable cause to detain him. *Young*, 987 F.3d at 646 (finding existence of probable cause defeated claims for false arrest, unlawful detention, and malicious prosecution); *see also Washington*, 98 F.4th at 878 ("Plaintiffs'

18

claims for malicious prosecution fail for the same reason that their Fourth Amendment claims fail—the detectives and courts had probable cause to detain them."); *Coleman*, 925 F.3d at 351 ("The undisputed facts show defendants had probable cause to arrest Coleman. This defeats Coleman's Fourth Amendment claim and his state law malicious prosecution claim."); *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001) (the absence of even one element will preclude recovery for malicious prosecution).[8]

Plaintiff argues that there is a genuine issue of material fact that precludes summary judgment because the entire basis for the detention and prosecution of Plaintiff was a fraudulent statement coerced from a witness. The Court notes that under Illinois law the "existence of probable cause in a malicious-prosecution action is 'determined by looking to what the defendants knew at the time of subscribing a criminal complaint' and not at the (earlier) time of arrest." *Vaughn*, 662 F. App'x at 467 (quoting *Gauger v. Hendle*, 954 N.E.2d 307, 329 (2011)) (finding probable cause defeated malicious prosecution claim where troopers pulled vehicle that plaintiff was driving over for speeding and an obstructed windshield, discovered a firearm in the trunk, and learned from a records search that the plaintiff was a felon and a suspect in an aggravated assault and armed robbery involving a weapon of the same caliber). Here, the Court concludes that Shemitraku had probable cause to arrest and detain Plaintiff independent of Howard's allegedly coerced statement. *See Sang Ken Kim v. City of Chicago*, 858 N.E.2d 569, 578 (Ill. App. Ct. 2006) (affirming summary judgment against plaintiff on claims of malicious prosecution because there was no issue of material fact as to whether probable cause existed at the time of the arrest independent of plaintiff's coerced confession).

The Court finds the reasoning of *Young* instructive on this issue. There, the plaintiff

---

[8] The Court need not reach Defendants' arguments regarding malice or improper influence.

argued that the police falsified evidence against him after his arrest by destroying his first written statement. The court found, "[E]ven assuming the police did so, they still had probable cause to detain Young pending trial. Once more, at the risk of sounding like a broken record, the officers found Young with a gun next to him in the car that he was driving. They didn't need anything else." *Young*, 987 F.3d at 645. The scene of arrest, even accepting the police misconduct as true, still gave the officers adequate probable cause to detain him. *Id*.

So too here. Even if, as Howard later testified, Shemitraku coerced Howard to give a false statement that she observed Plaintiff with a gun in his hand as he placed it in the trunk area, Shemitraku still had independent probable cause to detain Plaintiff pending trial. In other words, "[p]robable cause existed as a matter of law even when we give the plaintiffs the benefit of factual disputes." *Washington*, 98 F.4th at 877.[9] For this reason as well, the identity of the second officer that interviewed Howard is immaterial.

For the foregoing reasons summary judgment is warranted in Shemitraku's favor on Counts I, II, and IV, which are dismissed as against Shemitraku.

### c. Qualified Immunity

Defendants argue that the Defendant Officers are entitled to qualified immunity for Plaintiff's Section 1983 claims. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"

---

[9] While the parties do not address whether or when there was a judicial finding of probable cause, the Court analogizes these circumstances to those cases involving a judicial finding of probable cause. In those cases, "[k]nowingly or recklessly misleading the magistrate in a probable cause affidavit—whether by omissions or outright lies—only violates the Fourth Amendment if the omissions and lies were material to probable cause." *Rainsberger v. Benner*, 913 F.3d 640, 643 (7th Cir. 2019). "Materiality depends on whether the affidavit demonstrates probable cause when the lies are taken out and the exculpatory evidence is added in." *Id.* Where, after eliminating the alleged misrepresentations, undisputed facts show that probable cause would still have existed, the misrepresentations are not material. *Washington*, 98 F.4th at 878. Here, if Howard's false statement is taken out, probable cause still existed on the remaining undisputed facts and so the false statement is not material.

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In general, once the defendants raise the qualified immunity defense, the plaintiff must show two things: first, that there has been a violation of one or more of [his] federal constitutional rights, and second, that the constitutional standards at issue were clearly established at the time of the alleged violation." *Campbell v. Peters*, 256 F.3d 695, 699 (7th Cir. 2001) (citation omitted). "If the plaintiff fails to meet the first prong of the qualified immunity test, that is, fails to demonstrate that were the allegations established the officials would have violated a constitutional right, there is no need to consider the second prong." *Bleavins v. Bartels*, 422 F.3d 445, 455 (7th Cir. 2005).

Because Plaintiff fails to show a violation of his constitutional rights, the Defendant Officers are entitled to qualified immunity on Plaintiff's Section 1983 claims.

## II.     *Respondeat Superior* **and Indemnification (Counts III and IV)**

Plaintiff's indemnification claim against the Village stems entirely from his claims for false arrest and unlawful pretrial detention against the Defendant Officers. Plaintiff's *respondeat superior* claim against the Village stems entirely from his malicious prosecution claim against the Defendant Officers. Because Plaintiff's false arrest, unlawful pretrial detention, and malicious prosecution claims against the Defendant Officers fail, so too must his derivative claims against the Village. *See Young*, 987 F.3d at 646; *Coleman*, 925 F.3d at 351. The Court accordingly grants the Defendants' motion for summary judgment as to Plaintiff's *respondeat superior* and indemnification claims. Count III and the *respondeat superior* claim against the Village in Count V are dismissed.

## <u>Conclusion</u>

The Court grants in full the Defendants' motion for summary judgment [93]. Case dismissed.

**SO ORDERED.**                                                **ENTERED: August 30, 2024**

_____
**HON. JORGE ALONSO**
**United States District Judge**